# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:05cv270

| | |
|---|---|
| MARSHA MORGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM AND |
| Vs. ) | RECOMMENDATION |
| ) | |
| NORTH CAROLINA DEPARTMENT ) | |
| OF HEALTH AND HUMAN SERVICES, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the court upon defendant's Motion to Dismiss. Having carefully considered defendant's Motion to Dismiss and reviewed the pleadings, the court enters the following findings, conclusions, and Recommendation.

## FINDINGS AND CONCLUSIONS

**I.   Background**

The following factual background is drawn from plaintiff's Complaint and the exhibits thereto and is deemed true for purposes of the pending Motion to Dismiss. Plaintiff is a state employee who was aggrieved by a decision of her employer, Black Mountain Center, to deny her a promotion to the position of symbol board technician. In 1998, plaintiff filed a *pro se* petition for a contested case hearing with the North Carolina Office of Administrative Hearings alleging denial of a promotion based on her age and race.

1

Later that year, plaintiff retained the services of counsel herein to represent her in such petition. Plaintiff and counsel entered into a retainer agreement whereby plaintiff agreed to pay counsel a maximum of $5,000.00 in fees and that if she prevailed, counsel would seek all attorney's fees and costs. In 1999, plaintiff and her counsel entered into a second retainer agreement whereby they agreed that if plaintiff was awarded fees between $5,000.00 and $22,500.00, counsel would have the right to receive all such fees, but that if such fees exceeded $22,500.00, counsel would divide the remaining amount of such fee with plaintiff.

While the state charge of discrimination was pending, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that her employer had discriminated against her based on her age and race, as violations of the Age Discrimination in Employment Act ("ADEA") and Title VII. Plaintiff requested that such charge be cross filed with the state deferral agency, see 42 U.S.C. § 2000e-5(d), but she contends that such task was never accomplished by the EEOC. She received a right to sue letter on August 16, 1999, from the EEOC, but never acted on such letter.

After a number of hearings before the Office of Administrative Hearings in 2000, an administrative law judge ("ALJ") issued a favorable recommended decision finding that she was improperly denied the promotion. Such decision was adopted by the State Personnel Commission in 2001, which was not appealed by her employer.

After the favorable decision became final, plaintiff filed a petition for attorney's fees and costs in 2001 with the State Personnel Commission citing two North Carolina statutes

and stating that such award was being sought under both North Carolina law and Title VII. Plaintiff sought $113,426.00 in attorney fees and $12,229.53 in costs. Later in 2001, the State Personnel Commission awarded plaintiff's attorney $5,000.00 in fees and $6,970.46 in costs. Plaintiff appealed this award to the North Carolina General Court of Justice, Superior Court Division, for Wake County, again stating that such award was being sought under state and federal law.

The Superior Court held that the Commissioner's award of attorney's fees was unreasonable and awarded a fee of $22,500.00, but upheld the award of costs. The Superior Court refused to award fees in excess of $22,500.00 because such an award would be in excess of that allowed by Chapter 126-4(11) of the North Carolina General Statutes, which provides

> In cases where the Commission finds discrimination, harassment, or orders reinstatement or back pay whether (i) heard by the Commission or (ii) appealed for limited review after settlement or (iii) resolved at the agency level, the assessment of reasonable attorneys' fees and witnesses' fees against the State agency involved.

N.C.Gen.Stat. § 126-4(11). The Superior Court did not address the federal aspects of plaintiff's claim.

Plaintiff appealed the decision of the Superior Court to the North Carolina Court of Appeals. In affirming the decision of the Superior Court, the appellate court held that the Superior Court had properly limited the award to $22,500.00 and that allowing plaintiff to recover a portion of the fee was tantamount to allowing plaintiff to recover damages, which

was prohibited under the State Personnel Act. The Court of Appeals did not address the federal aspects of plaintiff's claim or appeal.

Plaintiff then filed a Notice of Appeal and Petition for Discretionary Review with the North Carolina Supreme Court, again contending that she was entitled to fees and costs under both federal and state law. The North Carolina Supreme Court denied review.

Subsequent to these state court decisions, plaintiff filed a second charge with the EEOC. In May 2005, the EEOC dismissed that charge and issued a right to sue letter.

This action was thereinafter filed, in which plaintiff seeks a declaratory judgment under 28, United States Code, Section 2201 & 2202, in the form of fees and costs under 42, United States Code, Section 2000e-5(k). Defendant has moved to dismiss, contending that this court lacks subject matter jurisdiction and that plaintiff has failed to state a cognizable claim. Fed.R.Civ.P. 12(b)(1)&(6). The issues have been fully briefed.

**II.     Standard of Review**

    **A.     Rule 12(b)(1) Standard**

Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit. Lack of subject-matter jurisdiction may be raised at any time either by a litigant or the court. <u>Mansfield, C. & L.M.R. Co. v. Swan</u>, 111 U.S. 379, 382 (1884). The ability of the court to independently address subject-matter jurisdiction is important to finality inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and raise the issue of

subject-matter jurisdiction for the first time on appeal, thereby voiding the judgment. Capron v. Van Noorden, 2 Cranch 126, 127, 2 L.Ed. 229 (1804). The Federal Rules of Civil Procedure anticipate this issue and provide that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).

When a court considers its subject-matter jurisdiction, the burden of proof is on the plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In Richmond, Fredricksburg & Potomac R.R. Co. V. United States, 945 F.2d 765 (4th Cir. 1991) (Ervin, C.J.), the Court of Appeals for the Fourth Circuit held, as follows

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Id.; Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir.1987). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Trentacosta, supra, 813 F.2d at 1559 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Trentacosta, supra, 813 F.2d at 1558. A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to de novo appellate review. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989); Shultz v. Dept. of the Army, 886 F.2d 1157, 1159 (9th Cir.1989).

Id., at 768-69. Where jurisdictional facts are intertwined with facts central to the substance of a case, a court must find that jurisdiction exists and consider and resolve the jurisdictional objection as a direct attack on the merits of the case. United States v. North Carolina, 180

F.3d 574, 580 (4th Cir. 1999).

**B.   Rule 12(b)(6) Standard**

Where a defendant contends that a plaintiff has failed to state a cognizable claim, Rule 12(b)(6) authorizes dismissal based on a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1832 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). As the Court discussed in Neitzke:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts . . . a claim must be dismissed, without regard to whether it is based on outlandish legal theory . . . . What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

Id., at 1832 (citation omitted). Dismissal of a complaint is proper under Rule 12(b)(6) where it is clear that no set of facts consistent with the allegations in the plaintiffs' complaint could support the asserted claim for relief. Taubman Realty Group LLP v. Mineta, 320 F. 3d 475, 479 (4th Cir. 2003); Migdal v. Rowe Price-Fleming Intl Inc., 248 F. 3d 321, 325-36 (4th Cir. 2001).

While the court accepts factual allegations in the complaint as true and considers the facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

The presence of a few conclusory legal terms does not insulate a

> complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion. And although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. This requirement serves to prevent costly discovery on claims with no underlying factual or legal basis.

Migdal, supra, at 326 (citations and internal quotations omitted). In addition, a court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Venev v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted). For the limited purpose of ruling on defendant's motions, the court has accepted as true the facts alleged by plaintiff in the complaint and will view them in a light most favorable to plaintiff.

### III.   Abstention.

The issue to be determined in this case is whether the federal courts should abstain in this matter under Rooker v. Fidelity Trust Co., 263 US 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 426 (1983), known as the Rooker/Feldman doctrine. The Court of Appeals for the Fourth Circuit summarized the Rooker/Feldman doctrine in American Reliable Insur. Co. v. Stillwell, 336 F.3d 311 (4th Cir. 2003), as follows:

> Under the Rooker-Feldman doctrine, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court." . . . . The Rooker-Feldman doctrine, therefore, preserves a fundamental tenet in our system of federalism that, with the exception of *habeas* cases, appellate review of state court decisions occurs first within the state appellate system and then in the United States Supreme Court.  A litigant may not circumvent these jurisdictional mandates by

> instituting a federal action which, although not styled as an appeal, "amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court." For purposes of Rooker-Feldman, "[t]he controlling question ... is whether a party seeks the federal district court to review a state court decision and thus pass upon the merits of that state court decision."

Id., at 316 (citations omitted). Although federalism and comity surely attend application of the Rooker-Feldman doctrine, the doctrine operates principally to preserve the structure of appeals from state courts to the United States Supreme Court under 28 U.S.C. § 1257(a) and to bar any proceeding that would functionally amount to a lateral appeal of a state court decision to a United States district court. Id. For this reason, the Rooker-Feldman doctrine prohibits a district court from consideration of issues "actually presented to and decided by a state court." Plyler v. Moore, 129 F.3d 728, 731 (4th Cir. 1997).

The question squarely put to this court is what "issues" or better yet what "claims" were actually "presented to and decided by a state court." Id. The Rooker-Feldman doctrine prevents not only federal consideration of issues that were actually decided by a state court, Kamilewicz v. Bank of Boston Corp., 92 F.3d 506, 509 (7th Cir.1996), it also prevents lower federal courts from considering constitutional claims that are "inextricably intertwined" with state court judgments, as when success on the constitutional claim depends upon a determination that the state court wrongfully decided the issues before it. Nationscredit Home Equity Servs. Corp. v. City of Chi., 135 F.Supp.2d 905, 909 (N.D. Ill. 2001). If the injury which the plaintiff alleges in the federal action resulted from the state court judgment itself, then Rooker-Feldman controls and a federal district court lacks jurisdiction over the

claim. 4901 Corp. v. Cicero, 220 F.3d 522, 527 (7th Cir.2000). See Blair v. Supportkids, Inc., 222 F.Supp.2d 1038, 1046 (N.D.Ill. 2002).

Reading the Complaint in a light most favorable to plaintiff, it appears that at all levels of state judicial review the issue she presented was what amount of attorneys fees and costs was she entitled to receive under North Carolina and federal law; however, the State Personnel Commission and state courts, *de novo*, determined what amount of fees and costs she was entitled to under state law only. The question under Rooker-Feldman is whether the issue of fees and costs under Title VII was separate and distinct from the issue of fees and costs under state law, and that by failing to address such issue it may be brought in this court as a presented yet unreviewed claim.

> [F]ederal plaintiffs cannot be said to have had a reasonable opportunity to raise their federal claims in state court where the state court declines to address those claims and rests its holding solely on state law. We have noted the Rooker-Feldman doctrine is founded upon principles of federalism. However, the district court's holding in this case extends such doctrine far beyond the deference to our state colleagues which federalism counsels. Were the district court's reasoning to stand, defendants in state court would be placed in the following quandary: if they do not raise their federal claims in the state proceedings, they run the real risk of not being able to bring them subsequently in federal court. Feldman, 460 U.S. at 482 n. 16, 103 S.Ct. 1303 ("By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state-court decision in any federal court."). But if they do raise federal claims in their state court defense, and the state court declines to address them, then according to the district court in this case they are also barred from bringing those claims in federal court. No principle of federalism suggests or requires such a result. As the Eleventh Circuit has stated, "[s]uch a harsh rule might deprive the plaintiff of any forum, state or federal, where he has a reasonable opportunity to present his federal constitutional claims, a result arguably contrary to the requirements of due process." Wood v. Orange County, 715 F.2d 1543, 1547 (11th Cir.1983).

> \* \* \*
> While we hold the Rooker-Feldman doctrine does not bar federal claims brought in federal court when a state court previously presented with the same claims declined to reach their merits, we emphasize a state court need not undertake extensive analysis of every federal claim before it, regardless of merit, in order for Rooker-Feldman to bar a later federal suit. A state court need only indicate it has considered, reached the merits, and rejected the federal claims in order for that doctrine to apply.

Simes v. Huckabee, 354 F.3d 823, 829-30 (8th Cir. 2004). Defendant argues in its reply that Simes would be inapplicable because the "issue of attorney's fees raised by plaintiff was not separate and distinct under Title VII and state law." Reply, at 3. While attorney's fees and costs may be classified as one "issue," it appears that plaintiff has two distinct claims to fees: one under state law and one under federal law.

In a recent decision of the United States Supreme Court, Exxon Mobil Corp. v. Saudi Basic Industries Corp., 125 S.Ct. 1517 (U.S. 2005), the Court held that the Rooker-Feldman doctrine and the Supreme Court's appellate jurisdiction over state court judgments does not prevent a district court from exercising subject matter jurisdiction where a party attempts to litigate in federal court a matter previously litigated in state court. The Court held that if the plaintiff in federal court presents some independent claim - - even if it is one that denies a legal conclusion that a state court has reached in a case to which plaintiff was a party - - then there is federal jurisdiction. In such circumstances, the Court held that a federal court in reaching the merits of the claim would look to state law to determine whether the defendant prevails under principles of preclusion. 28 U.S.C.A. § 1257. Id., at 1527. Because

preclusion is an affirmative defense under Rule 8(c), Federal Rules of Civil Procedure, not a jurisdictional matter, defendant will need to plead and later prove *res judicata*. Id.

Taking plaintiff's Complaint as true, the North Carolina Courts reached and resolved her claim for fees under North Carolina law. Those courts failed, however, to address or even mention her claim for fees and costs under Title VII. Under Simes as well as Exxon Mobil Corp. it would appear that plaintiff's *claim* for attorney's fees under Title VII as a prevailing party was simply not reached by the North Carolina courts. To now deny plaintiff access to the federal courts on a federal claim that has never been considered by a court would appear to be inconsistent with current case law, in that it would deny plaintiff access to the courts.

Based upon the foregoing, it appears that this court does have jurisdiction and the plaintiff's complaint does present allegations upon which a claim for relief could be granted. The undersigned will, therefore, recommend that defendant's Motion to Dismiss be denied and that defendant be required to file its answer. The undersigned specifically declines to consider issues of *res judicata* at this point in light of the reasoning of Exxon Mobil Corp., supra, at 1527.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's Motion to Dismiss (#6) be **DENIED.**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g denied</u>, 474 U.S. 1111 (1986); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984).

**Signed: January 5, 2006**

*Dennis L. Howell*
Dennis L. Howell
United States Magistrate Judge